## ORGAN v. STATE.

### Opinion delivered May 28, 1892.

*Inter-state commerce—Exportation of game.*

> The act of the legislature prohibiting the exportation of game
> and fish from the State does not violate the commerce clause
> of the Federal Constitution.

Appeal from Crittenden Circuit Court.

J. E. RIDDICK, Judge.

Organ was convicted of a violation of the act pro-
hibiting the exportation of fish and game from the State.
It is conceded that he was master af a steamboat plying
the Mississippi river between West Memphis, in Crit-
tenden county, Arkansas, and Memphis, Tenn., and that
as such master he received and transported a barrel of
fish from the former to the latter place, and that the fish
were taken from public waters in Crittenden county.
Organ has appealed, and contends that the act under
which the conviction was had is unconstitutional.

The act of April 12, 1889, ch. 117, as amended by the act of March 31, 1891, ch. 88, provides as follows:

"Section 1.    That all the game and fish, except fish in private ponds, found in the limits of this State, be and the same are hereby declared to be the property of the State, and the hunting, killing and catching of same is declared to be a privilege.

"Sec. 2.    It shall be unlawful for any person to export any fish or game from this State until April 12, 1895, and any person violating the provisions of this act shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than twenty-five (25) nor more than fifty (50) dollars ; *Provided,* That it shall not be unlawful under this act to export beaver, opossums, hares or rabbits, ground hogs or woodchucks, raccoons, squirrels, snipes or plover. *Provided,* The same shall be shipped openly.

"Sec. 3.    It shall be unlawful for any railroad company, steamboat, express company, or any other common carrier, to take for carriage any fish or game consigned to points beyond the limits of this State.

"Sec. 4.    Any such common carrier may refuse to receive any package which it may suppose contains fish or game designed for export, and may cause said package to be opened, or may satisfy themselves in any other way that said packages do not contain game or fish.

"Sec. 5.    Any common carrier violating the provisions of this act shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than fifty nor more than two hundred dollars.

"Sec. 6.    Any violation of this act shall be prosecuted in the name of the State of Arkansas, and one-half of the fine shall be paid into the county treasury as other fines are required to be paid, and the other half shall go to the informer.

"Sec. 7. Justices of the peace shall have jurisdiction of prosecutions under this act.

"Sec. 8. All laws and parts of laws in conflict herewith are hereby repealed, and this act shall be in force from and after its passage."

*W. M. Randolph* for appellant.

1. The act, so far as it undertakes to vest the property in the fish in the State, is void. 18 How. 74; 94 U. S. 391; Angell on Watercourses, sec. 535; 60 N. Y. 56–67; Tiedeman on Lim. Police Power, sec. 125, p. 451; Cooley, Const. Lim. (6th ed.) p. 642; 5 Day, 22; 5 Conn. 391; 20 Com. Bench (N. S.), 1.

2. The act violates that part of the Constitution which confers upon Congress the power to regulate commerce. 9 Wheat. 196; 15 Wall. 232; 121 U. S. 230; 117 *id.* 34; 114 *id.* 196; Cooley's Const. Lim. (6th ed.), 595, 596; 141 U. S. 62.

*W. E. Atkinson*, Attorney General, and *Chas. T. Coleman*, for appellee.

1. The ownership of the fish is in the State, and the act is only declaratory of the common law. 97 Ill. 333; 31 Cent. Law Jour. 271, and cases cited. The legislature may therefore make such regulations as to the taking of fish as it may deem necessary for their protection. Tied. Lim. of Police Power, sec. 122; 60 N.Y. 10. The constitutionality of such laws has been expressly upheld. 29 Ind. 409; 5 Mass. 266; 10 *id.* 212.

2. Game laws may indirectly affect interstate commerce, but they are held to be within the proper scope of the State's police power, and not an encroachment upon Congressional prerogative. 60 N. Y. 10; 97 Ill. 333; 1 Mo. App. 15; 7 *id.* 524. Under our statute, fish cannot lawfully become the subject of commerce with other States. The statute declares the taking of fish a privilege, granted upon the express condition that they shall

not be taken for export. 31 Cent. Law Journal, 271, and cases cited. See the case in 19 Kas. 127.

HEMINGWAY, J. The ownership of fish is in the State for the benefit of its people in common, and the legislature has the right to permit individuals to catch them upon such terms and conditions as it may impose, and to restrict the property acquired in them, when caught, to such extent as it deems proper. *McCready* v. *Virginia*, 94 U. S. 391; *American Express Company* v. *People*, 133 Ill. 649; *Magner* v. *People*, 97 Ill. 333.

It may prohibit catching them entirely, or for a specified season; or it may permit them to be caught for the use of the person who makes the catch, and withhold the right to sell them, or ship them for sale. When preserved for the common benefit of the people of the State, they are not articles of commerce in any sense, and we cannot see that they become such simply because the legislature permits them to be caught by individuals for use within the State only.

One who catches them had originally no separate property in them, and no right to acquire it except as the legislature might provide; as all right of property in them is derived from the State, it is subject to such terms as the legislature imposes. It saw fit, in the act assailed, to confer a right of property, but to so limit it that the article should not be shipped from the State, the purpose being to restrict the use to those who originally owned it in common. The restriction was imposed by right of ownership, and not in the exercise of any assumed power to regulate the commercial uses of private property.

Under this limitation fish never pass from the dominion of the State as proprietor or become articles of commerce in the sense contended for by the defendant, because the qualified property right is conferred upon condition that the use shall be restricted and shipment

from the State not allowed. It follows that the act does not violate the commerce clause of the Federal Constitution, and it could not be seriously contended that it violated any other constitutional provision.

We are aware a different conclusion has been reached by the courts of Kansas and Idaho. *State* v. *Saunders*, 19 Kas. 127; *Territory* v. *Evans* (Idaho), 23 Pac. Rep. 115. But that announced seems to us the better one, and is sustained by the Supreme Court of Connecticut in an opinion to which we refer for a more extended discussion of the subject. *State* v. *Geer*, 61 Conn. 144.

Affirm.