Argued December 2, decided December 29, 1908.

## STATE v. FISHER.

[98 Pac. 713.]

STATUTES—CONSTRUCTION—PENAL STATUTES.

1. A penal statute should be construed to carry out the obvious intention of the legislature, and applied only to cases within both its letter, spirit, and purpose.

GAME — PROTECTION — STATUTES — CONSTRUCTION — POSSESSION OF DEER KILLED IN SEASON—"SUCH DEER."

2. Section 2010, B. & C. Comp., as amended by Laws 1907, p. 342, makes it unlawful to hunt, kill, or pursue deer within the State during the closed season, and declares that "any person having in possession any deer or carcass or part of a deer during the season when it is unlawful to take or kill such deer, shall be guilty of a misdemeanor." *Held*, that the words "such deer" referred to deer killed during the closed season, and that the section did not prohibit the keeping during the closed season, for food, the flesh of deer lawfully killed during the open season.

GAME—CLOSED SEASON—POSSESSION—EVIDENCE—STATUTES.

3. Section 2010, B. & C. Comp., as amended by Laws 1907, p. 342, forbidding any person to have in possession any deer or carcass or part of a deer during the closed season, and Section 2045, declaring proof of possession of any of the

aforesaid wild animals, etc., at any time when it is unlawful to take or kill them, shall be *prima facie* evidence that they were killed during the closed season, etc., possession of parts of the carcass of a deer during the closed season was not conclusive evidence that the deer was killed during the closed· season, or that such possession was unlawful.

From Linn: GEORGE H. BURNETT, Judge.

Statement by MR. COMMISSIONER SLATER.

The defendant, George W. Fisher, was arrested, tried, and convicted in a justice's court for Linn County, upon a charge of having violated the game laws of this State by having in his possession on December 12, 1907, in that county, six deer hams, when it was unlawful to take or kill such deer. He thereupon appealed to the circuit court, and the cause came on for trial on March 13, 1908. The State, having presented its case, rested, when the defendant, as witness in his own behalf, admitted that, on the day charged, he had in his possession eight deer hams, claiming to own the same, and offered to further testify that he killed the deer, of which the hams were a part, within Linn County, during the last week in October, 1907, and that the hams had been kept fresh by the application of salt, saltpeter and other preservatives, but the evidence was rejected by the court upon objection by the State that the proffered testimony was irrelevant and immaterial. Defendant excepted, and rested his case. After argument of counsel, the court instructed the jury that if they found that defendant had in his possession, at the time charged, any deer hams, being parts of any deer, they must return a verdict of guilty against defendant without regard to the time when, if at all, defendant killed the deer of which such hams formed a part; to which instruction defendant excepted. A verdict having been rendered against him, the court sentenced him to pay a fine, and from this judgment he appeals, assigning as errors the rejection of his proferred testimony and the giving of such instruction.                    REVERSED.

For appellant there was a brief over the names of *Messrs. Weatherford & Hyatt,* with an oral argument by *Mr. James K. Weatherford.*

For the State there was a brief and oral arguments by *Mr. John H. McNary,* District Attorney, and *Mr. Gail S. Hill,* Deputy.

Opinion by MR. COMMISSIONER SLATER.

1. The defendant is charged with a violation of the provisions of Section 2010, B. & C. Comp., as amended by the act of February 25, 1907 (Laws 1907, p. 342), which so far as material, reads as follows:

"It shall be unlawful at any time between the first day of November of each year and the fifteenth day of July of the following year, to hunt, pursue, take, kill, injure, destroy, or have in possession any buck deer. It shall be unlawful at any time between the first day of November of each year and the first day of September of the following year to hunt, pursue, take, kill, injure, destroy, or have in possession, any female deer. * * It shall be unlawful within the State of Oregon, at any time, to sell, or offer for sale, barter or exchange, any deer whatever.  Any person * * having in possession any deer or carcass, or part of a deer during the season when it is unlawful to take or kill such deer shall be guilty of a misdemeanor."

It is contended by the State that the latter part of this amendatory enactment is intended to prohibit any person from having possession of a carcass or part of a deer at any time during the season when it is unlawful to kill or take deer in this State regardless of the time when such deer was killed, and that proof of such possession is conclusive of the guilt of defendant.  The argument is that the language of the statute is clear, unambiguous, and certain, and that there is no room for construction.  The lower court must have taken this view and so construed the act.  On the part of the defendant the contention is made that the words "carcass, or part of a deer," used in the act, were intended, and

should be construed, to mean "a carcass or part of a deer taken or killed during the season when it is unlawful to take or kill such deer." If this construction of the act is correct, it is clear that the trial court erred in rejecting the defendant's proffered testimony and instructing the jury as it did. This result is reached by invoking the well-recognized rule of statutory construction that a penal statute should be construed to carry out the obvious intention of the legislature, and be confined to that. Every case must come, not only within its letter, but within its spirit and purpose, and should be given a rational construction. Sutherland, Stat. Const. § 354.

2. The general purpose and manifest object of the act of 1901, of which Section 2010, B. & C. Comp., is a part, is to protect and preserve from excessive slaughter the wild game of this State, by prohibiting the killing of any within a certain period of time, called a "close season," and limiting the number that may be taken or killed, and the purpose for which it may be taken, during the open season. What the law aims at is not the mere fact of possession of game, lawfully obtained, but to prevent its being unlawfully taken or killed, and its unlawful disposition when lawfully obtained. When the state of the law is apparently such that it is lawful for a person to kill a deer on October 31st for his own use, it ought not to be held to be a crime to be found thereafter in possession of all, or part of, the carcass, of such deer, with no other object or intent than to use it for food, unless it is certain that the law has made it so by a clear and manifest declaration. *State* v. *McGuire,* 24 Or. 366 (33 Pac. 666: 21 L. R. A. 478). It is plain that not only is the killing of deer, within the close season, prohibited and made punishable, but also having possession of the meat of a deer which was killed during the close season, although the person having possession, may not have done the killing, because the act of posses-

sion would tend to aid in the concealment of the offense of unlawfully killing game during the close season. To that extent, at least, the law is clear and unambiguous. But was it the intention of the legislature to go further than this and make it unlawful to have possession of a carcass, or part of a deer, during the time when it is unlawful to take or kill deer, although such deer was killed during the open season; that is, to make unlawful, by the mere lapse of time, that which in its origin was innocent? The words of the statute to be construed are as follows:

"Any person * * having in possession any deer, or carcass, or part of a deer, during the season when it is unlawful to take or kill such deer, shall be guilty of a misdemeanor."

These words, "having in possession any deer or carcass or part of a deer," when taken in their literal and ordinary meaning, neither expressly include the possession of a part of a deer taken in the open season, nor are any words used importing an intent to exclude from the prohibition the possession of a deer so taken or killed, unless by the use of the word "such," in the latter part of the sentence quoted, a limitation was intended. In the case of *State* v. *McGuire,* 24 Or. 366, 377 (33 Pac. 666, 670: 21 L. R. A. 478), Mr. Chief Justice LORD says that "it ought to require plain, unambiguous, and mandatory language to justify any court in declaring fish or game lawfully caught or taken to be the subject of an offense by the simple possession of it. A construction leading to such injustice ought to be avoided, if it can be reasonably done." The rule that, where the language of the legislature is fairly susceptible of two different meanings, that one should be preferred which excludes and prevents consequences that are mischievous and unjust, was there approved, and it has been applied in similar cases by other courts. *Commonwealth* v. *Wilkinson,* 139 Pa. 298, 305 (21 Atl. 14) ; *Allen* v. *Young,* 76

Me. 80; *Commonwealth* v. *Hall,* 128 Mass. 410 (35 Am. Rep. 387).

The words of the statute are sufficiently comprehensive to make it an offense to have during the close season possession of the "carcass or part of a deer" though lawfully obtained, and, in that event, proof of the fact of possession would raise a conclusive presumption of guilt. But the language is susceptible of a different construction for the word "such," as used in the phrase, "when it is unlawful to take or kill such deer," may fairly be held to refer to "a deer," the possession of the carcass, or part of which, is prohibited. The rule to be applied in such cases is that, "where the language of the legislature is fairly susceptible of two different meanings, that should be preferred which excludes and prevents consequences that are mischievous and unjust." *State* v. *McGuire,* 24 Or. 366 (33 Pac. 666: 21 L. R. A. 478). To adopt the former conclusion, as was said by Mr. Chief Justice GRAY, in *Commonwealth* v. *Hall,* 128 Mass. 410 (35 Am. Rep. 387), "when not imperatively required by the language of the act, would be inconsistent with the ordinary rules of construction of penal statutes." But we are not left to the mere unaided force of such rule to derive from this language its true intendment. On an examination of the entire original act, of which this amendment has become a part, we are of the opinion that it was never intended to declare that the mere possession during the close season of game, though lawfully obtained, should raise a conclusive presumption of guilt, but that proof of such possession should make a *prima facie* case.

3. The language of the statute on which the charge is based, and the construction of which is now under consideration, was by the amendatory act of 1907 added to Section 2010, B. & C. Comp., which section is a part of the general act of 1901 covering the entire game law of the State. It is, therefore, not to be construed by

itself, independent of all other provisions of the original act and as a part thereof; the provisions of the two should be made to harmonize, if possible, and no clause of either is to be left inoperative. 26 Am. & Eng. Enc. Law (2 ed.), 712, 713. The act of 1901, as it stood when first it became a law, contained provisions against having possession, during the close season, of deer or of the meat of a deer for the purpose of sale. But section 39 thereof, which is Section 2045, B. & C. Comp.. expressly declares that the legal effect of proof of such prohibited possession shall amount to no more than a rule of evidence, in these words:

"Proof of the possession of any of the aforesaid wild animals, wild fowl, or game birds, at any time when it is unlawful to take or kill the same, unless they be kept as in this section provided, shall be *prima facie* evidence in any prosecution for a violation of the provisions of this act, that the person or persons, firm, company, or corporation in whose possession the same is found, took, killed, destroyed or had in possession the same in the county wherein the same is found, during a period when it was unlawful to take, kill, destroy, or have the same in possession."

The situation here is identical with that in *Commonwealth* v. *Hall,* 128 Mass. 410 (35 Am. Rep. 381), where in considering the construction of a similar statute, Mr. Chief Justice GRAY remarks that "saying that possession shall be *prima facie* evidence necessarily implied that it shall not be conclusive; if the mere possession of birds, during the time within which the taking or killing is prohibited, of itself constituted an offense under the previous sections of the statute, to say that such possession should be *prima facie* evidence would be superfluous, if not absurd." To the same effect is *Commonwealth* v. *Wilkinson,* 139 Pa. 298, 305 (21 Atl. 14). Prior, then, to the amendment of 1907, which added to the statute the words upon which this charge is based, proof of the possession of any of the wild

game described therein, during the close season, did not raise a conclusive presumption of guilt against the person charged, but amounted only to making a *prima facie* case that the game was taken or killed during the period when it was unlawful to take or kill it, and shifted the burden upon defendant to show that it was taken or killed when it was lawful to do so. In that respect the original act has not been altered or changed by the amendatory act of 1907, but was in full force and effect at the time of the trial of the accused. Section 3 thereof, being Section 2010 of the Code, as amended by the act of 1907, interdicting "having in possession any deer, or carcass or part of a deer, during the season when it is unlawful to take or kill such deer," is still subject to the restrictive provisions of section 39 containing the rule of evidence above adverted to.

The defendant, therefore, had a right to show, in explanation of his admitted possession of eight deer hams during the close season, that the deer of which they were a part were killed by him, at a time when it was lawful to kill them, and thereby exonerate himself. And if the evidence offered was sufficient in the minds of the jury to overcome the *prima facie* presumption raised by the statute, he would be entitled to a verdict of acquittal. Hence the ruling of the court upon the exclusion of defendant's evidence, and the instruction given, were erroneous, and the judgment should be reversed and a new trial ordered.                REVERSED.