Argued January 14, decided January 21, 1913.

### STATE *v.* PULOS.

(129 Pac. 128.)

**Game—Regulation—Possession Out of Season—Statutes.**

1. Section 2289, L. O. L. (Sp. Laws 1909, p. 526), provides that it shall be unlawful in certain counties, at any time between January 15th and September 1st of any year, to take, kill, injure, destroy, or have in possession any wild duck. Held, that such section prohibited the having in possession of the carcasses of wild duck out of season which were killed in season.

**Game—Ownership—Regulation—"Privilege."**

2. Since the title to wild game is in the State, and no person has an absolute property right therein while in a state of nature and at large, the taking thereof is not a right, but a "privilege," which may be restricted, prohibited, or conditioned, as the law-making power may see fit; and hence the legislature may prohibit the having in possession of the carcasses of wild game out of season, though the game was lawfully killed in season.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Statement by MR. CHIEF JUSTICE McBRIDE.

The defendant, John Pulos, was indicted for the crime of unlawfully having in his possession a duck during the season when it was unlawful to kill the same. The indictment alleged that the duck was killed during the season when it was lawful to kill ducks. The defendant demurred generally, and, his demurrer being overruled, refused to plead further; whereupon the court directed a plea of guilty to be entered, and fined the defendant $50, from which judgment he appeals.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. F. E. Swope.*

For the State there was a brief over the names of *Mr. George J. Cameron,* District Attorney, *Mr. Andrew M. Crawford,* Attorney General, and *Mr. Wilfred E. Farrell,* with an oral argument by *Mr. Wilber Henderson.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. Section 2289, L. O. L. (Sp. Laws 1909, c. 10, p. 526, § 2), under the provisions of which this indictment was drawn, reads as follows:

"It shall be unlawful within the counties of Clatsop, Columbia, and Multnomah of the State of Oregon, at any time between the fifteenth day of January and the first day of September of any year, to take, kill, injure, destroy, or have in possession any mallard duck, wood duck, widgeon, teal, spoonbill, gray, black, sprigtail, or canvasback, or any wild duck."

It is conceded that the defendant had in his possession, during the time when it was unlawful to kill the same, one wild duck; in other words, that the act committed by him is within the exact letter of the section quoted, but, on account of an alleged injustice which would result from punishing him for having in his possession a bird which was killed when it was lawful to kill it, we are asked to fish through the statute for something that may be construed to modify the section quoted, and to hold that it does not mean what it says, but something radically different.

The case principally relied upon by appellant is *State v. Fisher,* 53 Or. 38 (98 Pac. 713), which was a case construing the law that prohibited having deer in possession during the closed season. The syllabus in that case states the contention, the statute, and the holding so tersely that we quote: "Section 2010, B. & C. Comp., as amended by Laws 1907, p. 342, makes it unlawful to hunt, kill, or pursue deer within the State during the closed season, and declares that 'any person having in possession any deer or carcass, or part of a deer during

the season when it is unlawful to take or kill such deer, shall be guilty of a misdemeanor.' Held, that the words 'such deer' referred to deer killed during the closed season, and that the section did not prohibit the keeping during the closed season, for food, the flesh of deer lawfully killed during the open season." The section and language there under consideration referred wholly to the taking, and having in possession, of deer; and no such saving clause is found in our present act, relating to the possession of wild birds.

The objection that the construction of the act insisted on by the State is unjust and absurd is urged with much plausibility, and it is said that it is unjust to permit a man to hunt lawfully on the 29th day of February and to punish him on the 1st day of March for having in his possession the game so lawfully taken the day previous. If the law compelled him to hunt on the 29th day of February, such a proceeding would be unjust, but he is not compelled to kill ducks on the last day of the open season; neither is he compelled to kill more game in the open season that he and his friends can consume before it closes. He has a choice of mercy to the birds, or of generosity to his friends.

The mischief that this section sought to remedy was the habit that prevailed to some extent among hunters who killed ducks during the closed season, and, when caught with the game in their possession, claimed that it had been killed during the open season. Experience had shown that it was next to impossible, in many instances, to show when the birds were killed, except from the statements of the sportsmen; and, while the veracity of fishermen and hunters is, of course, proverbial, experience had probably demonstrated to the legislative mind that in some exceptional cases a sportsman might possibly prevaricate rather than pay a fine of $50. This section was passed after the opinion in

*State* v. *Fisher,* 53 Or. 38 (98 Pac. 713), was handed down; and, taken in connection with the general game law passed at the same time, it is evident that the intention of the legislature was to close up the gap left in the efficiency of the law by that decision, and to make it clear that the possession of game during the closed season was absolutely prohibited. This act was passed at the special session of 1909, and did not profess to be an amendment of any previous act; nor did it make any reference to any previous act, except to repeal certain sections of the act of the regular session of 1909, one of which was void by reason of a clerical blunder. The section as it stands is the latest expression of the legislature on the subject, and the chapter seems to be complete in itself, and was, no doubt, intended to be so.

2. It is also contended that the duck having been lawfully killed became the private property of the defendant, and could not be taken from him or destroyed. This contention overlooks the well-known principle that title to wild game is in the State, and that no person has an absolute property right in game or fish while in a state of nature and at large; that the taking of them is not a right, but is a privilege, which may be restricted, prohibited, or conditioned, as the law-making power may see fit. *State* v. *Ashman,* 123 Tenn. 654 (135 S. W. 325); *Ex parte Maier,* 103 Cal. 476 (37 Pac. 402: 42 Am. St. Rep. 129); *Sherwood* v. *Stephens,* 13 Idaho, 399 (90 Pac. 345). In this State the privilege of killing and possessing wild game is limited to the open season. The law says to the sportsman: "You may hunt and kill wild game and keep it in your possession during a certain season, but you must not have it in your possession after the season closes." The right to possess is conditional, and ends with the limitation prescribed by law.

The judgment is affirmed.          AFFIRMED.